## WM. R. D. PHIPPS *v.* SHADRACH E. NYE, Adm'r, &c.

1. BILLS OF EXCHANGE: CONTRACT OF DRAWER AND INDORSER SEPARATE AND INDEPENDENT.—By the common law, there is no privity between the drawer and the several indorsers of a bill of exchange, but the contract and liability of each is separate and independent from that of the others; and hence, if an indorser pay the bill, he cannot maintain *indebitatus assumpsit* against any of the parties primarily liable, to recover the amount so paid.

2. SAME: EFFECT OF JUDGMENT IN A JOINT ACTION AGAINST DRAWER AND INDORSER: SECOND INDORSER PAYING SUCH JUDGMENT, MAY MAINTAIN INDEBITATUS

ASSUMPSIT AGAINST FIRST INDORSER.—A statute of the State of Tennessee, which is similar in its provisions to the Act of 1837 (Hutch. Dig. 852), requires the holder of a dishonored bill of exchange to sue in a joint action all the resident parties to such bill, and it also provides, that the judgment recovered in such joint action shall be collected of the defendants in the order in which they are respectively liable. When, therefore, a judgment is rendered in such an action upon a bill drawn and indorsed in the State of Tennessee, it creates a joint and several liability on the defendants, to pay the same in the order stated in the statute; and hence, if the first indorser fail to pay such judgment, whereby the second indorser is compelled to pay the same, the latter is regarded in the light of a surety to the former, and may, upon such payment, maintain *indebitatus assumpsit* to recover from the first indorser the sum so paid. And the Statute of Limitations, in such a case, will commence running from the time of such payment, and not from the time the bill became due, or the date of the rendition of the judgment. Fisher, J., dissented.

3. PLEADING: NUL TIEL RECORD: PARTICULARITY IN PLEADING, WHERE TWO JUDGMENTS ARE DESCRIBED IN DECLARATION.—Where the declaration describes, as inducements to the plaintiff's cause of action, two judgments rendered in a sister State,—one in the court of the first instance, and the other rendered in the appellate court, upon a writ of error to the first judgment,—if the defendant plead *nul tiel record* as to the judgment mentioned in the declaration, without specifying which judgment is denied, a record of the judgment in the appellate court, duly authenticated by the judge and clerk of that court, embracing a record of the judgment in the court of the first instance, will be sufficient to sustain the issue for the plaintiff.

4. HIGH COURT: PRACTICE: EXCESSIVE VERDICT NOT SET ASIDE, UNLESS OBJECTED TO IN COURT BELOW.—Where no motion for a new trial has been made in the court below, nor any exception taken there to the amount of the verdict, it will be too late to object, for the first time, in this court, that the verdict and judgment are for a sum larger than is warranted by the evidence.

5. BILLS OF EXCHANGE: DRAWERS AND INDORSERS: EFFECT OF JOINT JUDGMENT AGAINST.—The statute of Tennessee, which requires the holder of a dishonored bill of exchange to sue the drawer and indorsers in a joint action, applies merely to the remedy for the violation of a contract, and does not affect the contract itself; and as, by the commercial law, the several contracts of the drawer and indorsers of a bill are separate and independent of each other, and as the rights of these parties *inter sese* are not tried and determined in a suit against them by the holder, but only their liability to him, a judgment rendered against them in such an action, does not operate as a merger of the bill as between the defendants; and hence, if a party secondarily liable pay such judgment, this gives him no right of action against any of the parties whose names appear before his on the bill, but he must bring his action on the bill itself. Per Fisher, J., dissenting.

IN error from the Circuit Court of Yazoo county. Hon. E. G. Henry, judge.

On the 24th day of April, A.D. 1852, Robertson Johnson, the intestate of defendant in error, commenced his action, in the Circuit Court of Yazoo county, against the plaintiff, to recover the sum of $3201. The declaration, or complaint, is as follows:—

"The complainant says that defendant is indebted to him in the sum of three thousand two hundred and one dollars, with interest,— it being the amount of a judgment entered in the Supreme Court of the State of Tennessee, at Nashville, at the December term thereof, A.D. 1847, viz., on the 13th January, A.D. 1848, against complainant, as plaintiff in error in said court: to which said court complainant had prosecuted a writ of error from a judgment rendered in the Circuit Court of Wilson county, in said State, on the 26th day of May, 1846, in favor of the President and Directors and Company of the Union Bank of Tennessee, against one George D. Cummings, said defendant and complainant (judgment having been previously rendered against one Robert S. Mills, one of the defendants to said cause), for the sum of twenty-five hundred dollars debt, and one hundred and seventy two dollars damages, together with costs of suit; which said judgment of the Circuit Court of Wilson county was founded upon a certain bill of exchange, drawn by said Cummings, in favor of said defendant, on Yeatman & Co., of New Orleans, La., drawn at Lebanon, on the 3d day of September, 1844, at eight months, for the sum of twenty-five hundred dollars, and first indorsed by said defendant, then by complainant, and then by said Robert S. Mills, and protested for non-acceptance and non-payment; and from which said judgment complainant prosecuted a writ of error to the Supreme Court of the State of Tennessee, where the same was affirmed at the December term thereof, 1847, viz., on the 12th day of January, A.D. 1848; and judgment was rendered against complainant for the amount of the judgment of the court below, together with $529, being 12½ per cent. interest on the same, amounting in all to the sum of $3201, which said judgment complainant fully paid off and satisfied on the 29th day of January, 1852.

"The relief demanded, is a judgment for the amount paid by said complainant, on account of defendant, and interest and costs of suit ($3201)."

To this complaint, the defendant filed several pleas, and among them the following:—

" 2. Defendant, for further answer, says, that plaintiff ought not to have or maintain his action against him, because said bill or draft, in plaintiff's complaint mentioned, was due and unpaid more than six years, before the said payment made by the plaintiff. And this, &c.

" 3. And for further answer, the defendant says, there is no such record as alleged in plaintiff's complaint. And of this, &c.

" 4. And for further answer, the defendant says, this action is founded upon a supposed judgment, had and obtained without the limits of this State, against the defendant and others, to wit, on the 26th day of May, A.D. 1846, at which time defendant was a citizen of this State, and therefore has not accrued or been rendered within three years against defendant. And this, &c."

The plaintiff demurred to the second and fourth answers, and his demurrer was sustained; and he replied to the third answer, " that there is such a record as that described in his complaint," &c.

Upon the trial of this issue, the plaintiff read in evidence a transcript from the record of the Supreme Court of Tennessee, attested by the clerk and chief justice of that court, according to the act of Congress. This transcript contained a copy certified by the clerk of the Circuit Court of Wilson county; of the record in that court of the judgment in favor of the Union Bank of Tennessee, as stated in the complaint; and also the proceedings in the Supreme Court of Tennessee, affirming that judgment, upon a writ of error prosecuted by the plaintiff in this suit, as is set out in the complaint.

The court decided the issue in favor of the plaintiff.

The cause was then submitted to a jury, who found a verdict for the plaintiff for $4085 75, for which sum the plaintiff had judgment.

During the progress of the trial, the defendant took a bill of exceptions to the ruling of the court, upon the issue tendered by his plea of *nul tiel record*, and to the refusal of the court to grant certain instructions asked for by him, sustaining the defence set up in his second and fourth answers.

To reverse the judgment rendered on the verdict of the jury, the defendant prosecutes this writ of error.

*Q. D. Gibbs,* for plaintiff in error,

Cited Statutes of Tennessee, by Caruthers and Nicholson, 416; Meigs Dig. 990; 2 Yerg. R. 544; 8 Ib. 494; 10 Ib. 202; *Moss* v. *Agricultural Bank,* 4 S. & M. 726.

*Yerger* and *Rucks,* on same side,

Cited 3 Kent Com. 112, note; 8 Barb. R. 171; 6 Wend. 288; 7 Term R. 568; 2 Wharton R. 344; 2 Black's R. 369; *Harvey* v. *Bacon,* 9 Yerg. 308.

*N. G.* and *S. E. Nye,* for defendant in error.

HANDY, J., delivered the opinion of the court.

This action was brought to recover a sum of money, paid by the intestate of the defendant in error, for the plaintiff in error, as upon *indebitatus assumpsit.* The declaration is framed under the Act of 1850, in relation to pleadings, and is inartificially drawn; but it alleges that the defendant was indebted to the plaintiff in the sum of $3201, with interest, it being the amount of a judgment rendered in the Supreme Court of the State of Tennessee, on the 12th January, 1848, against the plaintiff in this action, on a writ of error prosecuted by him to that court, upon a judgment rendered in Wilson Circuit Court, in that State, on the 26th May, 1846, in favor of the Union Bank of Tennessee, against one Cummings, and the defendant and the plaintiff, for the sum of $2500 debt, and $172 damages and costs, founded on a bill of exchange drawn by Cummings, upon which the defendant in this action was the first indorser, and the plaintiff the second indorser, which judgment was affirmed by the Supreme Court, with $529 damages, amounting to the sum above demanded, and which the plaintiff alleged that he paid and satisfied on the 29th January, 1852.

The defendant below pleaded sundry pleas, amongst which are the following:—

1. That the bill, on which the judgment was founded, was due more than six years before the payment made by the plaintiff.

2. That the judgment in the Wilson Circuit Court was rendered more than three years before the commencement of this suit; the

defendant being a citizen of this State at the date of that judgment, and continuing so.

3. *Nul tiel record,* as to the judgment alleged in the declaration.

These pleas were held to be insufficient, upon demurrer to the 1st and 2d, and, upon inspection of the record, as to the 3d; and judgment was rendered on the verdict for the plaintiff. The case is brought up upon a bill of exceptions, taken to the ruling of the court upon the trial, and matters of error on the face of the record.

The principal questions arising under the instruction granted by the court, at the instance of the plaintiff, and those asked in behalf of the defendant and refused, are, whether the action, regarding it as founded upon the bill of exchange, was barred by the Statute of Limitations, after the lapse of six years from the maturity of the bill? or whether, considering the action as founded upon the judgment in Tennessee, it was barred after the lapse of three years from the date of that judgment? It is insisted, in behalf of the plaintiff in error, that the action must fall under one or the other of these views, and that it is barred under either of them. There can be no doubt of the general correctness of both of the propositions; but the question is, whether they are applicable to this case?

It is to be observed, that neither the bill of exchange, nor the judgment, is set up in the declaration as the ground of the action. The statements in regard to them are made by way of inducement, and in order to show the nature and character of the original claim, and the plaintiff's right to recourse upon the defendant to recover the money paid by him. But the true cause of action is, that the plaintiff *paid the money,* and, by reason of the facts set forth in the declaration, is entitled to recover it from the defendant.

But it is insisted, in behalf of the plaintiff in error, that, under the facts of the case, the action for *money paid* cannot be maintained, because, in the payment of the money on the judgment, there was no privity between the plaintiff and the defendant; that their rights and relations depended upon their indorsements of the bill, in which they contracted separately and independently; and that the defendant was only liable and suable upon his special contract of indorsement; and, consequently, was not liable in *indebitatus assumpsit* for money paid by the plaintiff upon the judgment rendered against him on the bill.

These principles would be decisive of the case in favor of the plaintiff in error, if the rights of the parties to the bill stood entirely as they were by the rules of the common law. But, at the time of drawing the bill, there was a statute in force in the State of Tennessee, where the transaction took place, similar to the statute of this State, providing that all the parties, drawer and indorsers, to a bill of exchange, should be sued jointly, in one and the *same* action; and further, that after judgment, the money should be made, by the sheriff under the execution, out of the party first liable on the bill, and so on out of each one severally liable, in the order in which their names respectively stood upon the bill. And, under this statute, the parties to the bill under consideration were sued, and the judgment was rendered against the defendant in error as the last indorser, and the plaintiff in error as the first indorser.

The statute being in force at the time of the drawing of the bill, the contract must be considered as having been made with reference to it; and any modification of the general rights and relations of the parties to the bill, arising from the provisions of the statute, must be considered, upon a familiar principle, as having been adopted into, and as forming part of the contract. Without the statute, every indorsement was a separate and distinct contract, upon which alone the indorser was liable to any subsequent party, upon his special contract, and according to well-settled rules pertaining to the subject. But the statute gives rise to a privity, to a certain extent, between a prior indorser and a subsequent one, which did not previously exist. They were both to be joined in one and the same action with the drawer, and after the liability of both of them was fixed by the judgment against them, it became the duty of the first indorser to satisfy the judgment, before execution could be had of the property of the second indorser, who of course was entitled to demand that the money should be made of the first indorser before he was coerced to pay it. This duty on the part of the first indorser, and consequent right on the part of the second, arose from the fact that they were sued jointly, and a joint judgment was rendered against them, creating relative and dependent duties and obligations, which did not exist by the contract of indorsement according to the rules of the common law. The original contract became merged in the judgment; after which, the rights

of the parties were governed by the judgment, and not by the rules applicable to the bill before the judgment. Instead of a separate and independent contract, as each indorsement was before judgment, the judgment created a joint and several obligation, which it was the duty of the first indorser first to discharge, and to save the second indorser harmless therein. If so discharged, there is no obligation resting upon the second indorser. But if he is compelled to pay it, it is because the prior indorser, who was bound jointly and by the same proceeding with himself, and who was primarily bound to pay it, has failed to perform his obligation. Hence, the judgment gives rise to privity between the parties; and inasmuch as they are jointly bound in the same proceeding, and it is the duty of the first indorser to satisfy the judgment and save the second indorser from its payment, if the second indorser satisfies it, he has done that which a party jointly and severally bound with himself, and whose duty it was first to satisfy it, should have done, and is entitled to recover of him for money paid on his account.

Under such circumstances, the relations of the parties are, in substance, the same as those which exist between principal and surety; and the second indorser, paying a judgment in default of the first indorser, is to be regarded in effect as a surety paying money for his principal, and is entitled to recover it from his prior indorser, upon the same principle which gives a remedy to the surety. And it follows from this view, that the defendant in error was entitled to maintain his action, not upon the bill, nor necessarily upon the judgment, but for having paid the money at the instance of the plaintiff in error; and that this right of action accrued at and from the time of paying the money.

Again, it is insisted that the court below erred in its ruling, upon the plea of *nul tiel record*. And the ground of this objection is, that the transcript of the record, offered upon the issue of *nul tiel record* by the plaintiff below, was of the judgment of the Supreme Court of Tennessee against the plaintiff alone, which showed no judgment of that court against the defendant.

It appears that two judgments are mentioned in the plaintiff's declaration,—the first and most prominent of which is, the judgment of the Supreme Court rendered on the writ of error of the plaintiff in this action below, and in consequence of which he claims to have

paid the money; and the other is, the original judgment in the Circuit Court against the parties to the bill of exchange, which is mentioned as a part of the history of the judgment which was paid and satisfied.

The plea of *nul tiel record* was general, without any reference to any particular judgment, but denying the existence of the record of the judgment alleged in the declaration.    This plea could not, with propriety, be considered as denying the record of both judgments mentioned in the declaration; and it was proper to consider it applicable to the judgment finally rendered against the plaintiff below, and which is stated as a prominent ground of his claim in the present action.    So considered, the transcript of the record from the Supreme Court of Tennessee, was duly made and authenticated, and was properly held to be sufficient to maintain the issue of *nul tiel record* as made, for the plaintiff.

This objection is entirely technical; for the judgment against the defendant below, as fully appears by the transcript of the record from the Supreme Court, as it could appear from a transcript from the Circuit Court; and hence the necessity of the plea of *nul tiel record* being certain to all legal intents, in order to give the party relying upon it the benefit of his objection to the sufficiency of the record, and to give the adverse party notice of what record he was required to produce.    If he failed to deny the existence of any particular record, there being two mentioned in the declaration, he cannot be permitted to object that the record of one of the judgments, though sufficient of itself, is not sufficient to establish the judgment referred to in the plea, for the uncertainty in the plea cannot operate to the prejudice of the plaintiff.

The last ground of error assigned is, that the judgment was for a greater amount than the plaintiff was entitled to recover.

It appears that no exception was taken on this ground in the court below, and no motion was made for a new trial.    The exceptions are confined to the rulings of the court during the progress of the cause, and to the instructions granted or referred upon the trial.    Under such circumstances, the objection comes too late in this court, and cannot be assigned for error, because the record contains nothing which properly presents the alleged error as a matter for review in this court.

Let the judgment be affirmed.

FISHER, J., delivered the following dissenting opinion.

Declining to concur with the majority of the court in their opinion, I will, as briefly as possible, state the reasons which have brought my mind to a different conclusion. Cummings, the drawer of a bill of exchange, Phipps, the first indorser, and the plaintiff's intestate, the second indorser, were all sued in a joint action in the State of Tennessee, and a judgment having been recovered against all, and the money paid by the last indorser, the plaintiff's intestate, the question is, whether this action, founded upon neither the bill of exchange nor upon the judgment, can be maintained. I respond in the negative to this question; and as it is admitted by the majority of the court, that aside from the statute of Tennessee, this position would be correct, let us inquire whether that statute can have any bearing upon the rights of the parties to this controversy. It is said that this statute entered into and became part of the contract of the parties, at the time the bill was drawn and the several indorsements were made. I cannot admit the correctness of this position. Each indorsement was a separate and distinct contract, as it was under the rules of the commercial law; and as evidence of this, the holder of the bill was allowed, and did in this very case recover, his judgment against the last indorser of the bill, in the joint action which was brought against all the parties, drawers and indorsers, in the State of Tennessee. There can be no such thing as a recovery upon a contract, unless a breach of that contract be averred and shown. Here the last indorser undertook to pay, upon certain well-known conditions, the amount of this bill to the Union Bank of Tennessee, without regard to any statute law of that State, and failing to comply with this contract, a right of action accrued to the bank; and this right of action, supposing it to have been well founded, carried with it the right to a judgment to enforce the contract; and the judgment being recovered, the provision of the statute relied on by the majority of the court, for the first time became operative in that controversy. The statute related to the remedy to enforce the contract alone. One provision declared that the holder of the bill should sue all the parties in a joint action, with a view of protecting them against the unnecessary costs of several suits; and the other provision, the one relied on by the majority of the court, related to the execution to

enforce the judgment.    The statute virtually declares to the holders of bills of exchange, that when the parties fail to perform their contract, a joint action against all is the remedy to recover a judgment; but you shall not have an operative execution against the first or subsequent indorsers until you have exhausted your remedy against the drawer, and so on against the other parties as their names may appear upon the paper.    These provisions, relating as they do alone, to the remedy to enforce a violated contract, are no part of the contract itself; for, if they were, the contract as to the indorsers and the holder would not be violated until the remedy against the drawer was exhausted.

The statute proceeds upon the ground, as it is the duty of the government to provide remedies to enforce contracts, and to redress injuries, it may consult what it conceives to be justice in so doing, and mould the remedies accordingly; and that this is virtually what it has attempted in this instance, by declaring that when the drawer and indorsers of a bill of exchange shall fail to perform their several contracts, of drawer and indorsers, the holder, undertaking to coerce them by legal means to perform such contracts, shall be restricted to a specified manner of proceeding.    So far from the contract being made with reference to the statute, the statute does not even begin to operate upon the contract until its violation, and then not until a remedy is sought to compel performance of the contract.    The question being thus narrowed down, may be disposed of in few words.    We look to the rules of the commercial law, for the purpose of ascertaining the precise nature of the contract, and to the statute of Tennessee, for the purpose of ascertaining the remedy to enforce such contract.    It was the former law which gave effect and efficacy to the contract, and the latter which regulated the remedy; and if the duty imposed by the former law had not been disregarded by the contracting parties, the latter law, the statute, would not have been regarded as having any bearing whatever upon the contract.

But this point, to my mind, does not require elaboration; and I will, therefore, proceed to consider the main point in the cause, which is, whether the action should not have been brought upon the contract of indorsement?    I am clearly of opinion that the action should have been so brought, for the reason that Phipps was

liable to his indorsee only in virtue of such contract. But, it is said, that the contract was merged in the judgment, and could not, therefore, be the foundation of another action. I disagree with the majority of the court in this position. It is unquestionably true that, as between Phipps and the Union Bank, this position is correct; for the reason that the judgment settled the rights of the parties to that controversy. But the judgment, not settling the rights as to the co-defendants to the suit, did not merge the contract upon which the suit was brought, except as between the plaintiff and the defendants, for the obvious reason that what was justice, as between Phipps and the Union Bank, may not be justice as between him and his indorsee. The fact that he indorsed the bill, and enabled the indorsee to gain credit upon the faith of such indorsement, may, with the proof of protest and notice, have been sufficient to hold him, Phipps, liable to the Union Bank. But, when the indorsee undertakes to hold him liable, he has a right to stand upon the substantial terms of the contract, and may make many defences which he could not make against an innocent holder. The question is not what the last indorser paid to the Union Bank, but what he was or is entitled to recover, under the terms of the contract between him and Phipps, the first indorser. It may be true that the bank had a meritorious cause of action against Phipps, and still not true that the plaintiff in this action has any right of action upon the indorsement. Phipps might show a want or failure of consideration, in the contract between him and his indorsee, payment, without taking up the bill, release, or anything else which would be a defence between these parties, but no defence against the bank, an innocent holder. It is, therefore, manifest, that the judgment in Tennessee did not, and could not in the nature of things, settle any right as to these parties; and this being true, the contract, as to them, is not merged in such judgment.

I am, therefore, clearly of opinion that the action should have been brought upon the indorsement, and not upon an account for the amount of money paid under the judgment in Tennessee. The demurrer, under this view, should have been extended to the declaration, and judgment rendered thereon for the defendant below.

A petition for a reargument was filed, in which counsel cited

and relied on *The Union Bank* v. *McClung*, Ex., &c., 9 Humph. 91; *Harvey* v. *Bacon*, 9 Yerg. 308; *Tucker* v. *Prewett*, 4 Ib., to show that the Supreme Court of Tennessee had taken a different view of the statute of the State under consideration, from that taken by the majority of the court, but the petition was refused.